

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN 24 P 4: 19

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JAMES JERROD SPIKES** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 04-2575** |
| **PAT BOOK, WARDEN** | * | **SECTION: "T"(6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. For the reasons set forth below, it is recommended that the instant petition be **DENIED WITH PREJUDICE**.

## I. PROCEDURAL HISTORY

On June 20, 2000, petitioner, James Jerrod Spikes, following trial by jury, was found guilty on one count of illegal use of weapons. Approximately two months later, on August 21, 2000, petitioner was sentenced to ten (10) years incarceration with credit for time

___ Fee_____ _____
___ Proc_____
X_ Dktd_____
✓ CtRmDep_____
___ Doc. No._____

served.[1]  Petitioner's conviction and sentence were upheld by the Louisiana First Circuit

Court of Appeal, *State v. Spikes*, 2001-KA-0146 (La. App. 1 Cir. November 14, 2001)

(unpublished decision)[2] and petitioner did not seek relief from the Louisiana Supreme Court

in connection with the appellate court's adverse decision.

Following the completion of his direct appeal proceedings, petitioner

commenced post-conviction proceedings. In his effort to obtain post-conviction relief,

petitioner filed so many pleadings that, as the State observed in its response, "it is virtually

impossible to determine from the state court record which of the writ denials relate to which

of the applications or motions filed by [petitioner]."[3] Petitioner's efforts in this regard ended

January 9, 2004, when the Louisiana Supreme Court denied his writ application. *State ex rel.*

*Spikes v. State*, 862 So.2d 977 (La. 2004).

In the instant federal habeas corpus application, petitioner claims that his

counsel was unconstitutionally ineffective, that the assistant district attorney committed an

act of malfeasance by upgrading the charge against him from a misdemeanor to a felony, and

that the court reporter falsified transcripts, making an arraignment on a misdemeanor charge

---

[1]*See* State rec., vol. 2 of 4, extract of minutes at pp.13 and 14.

[2]Copies of the Louisiana First Circuit's unpublished opinion are contained in the State rec., vols. 3 and 4 of 4.

[3]*See* Federal rec., doc. # 6, State's response at p. 5.

appear to be a bond reduction hearing.  Because petitioner had a post-conviction writ

application pending with the Louisiana Supreme Court until January 9, 2004, *State ex rel.*

*Spikes v. State*, 862 So.2d 977 (2004), and because he filed his federal habeas corpus

application within a year from that date, the State does not contest the timeliness of the

instant action.[4]  The State also implicitly concedes that petitioner has exhausted his state

court remedies, as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed.

2d 379 (1982), by virtue of the fact that it addresses the merits of petitioner's claims. [5]

## II.  STATEMENT OF FACT[6]

On February 17, 1999, in Bogalusa, Louisiana, petitioner was a passenger in

a Chevrolet automobile driven by Kekouya Jackson.  The car was stopped at the corner of

Martin Luther King Drive and Fourth Street when a black Mitsubishi automobile arrived

at the intersection.  An altercation arose between the occupants of the two cars.  They met

again at the corner of Columbia Street and Martin Luther King Drive. The two cars were

---

[4]*See* Federal rec. doc. # 6, State's response at p. 5.

[5]Even if petitioner has failed to satisfy his exhaustion requirement, this court, under the provisions of 28 U.S.C. § 2254(b)(2), may nevertheless deny petitioner's claims on the merits. § 2254(b)(2) authorizes such a dismissal "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

[6]The statement of fact is taken from the Louisiana First Circuit's unpublished opinion, *State v. Spikes*, 2001-KA-0146 (La. App. 1 Cir. 2001).

driven at high rates of speed down Columbia Street, with the Chevrolet chasing the Mitsubishi.

The petitioner braced his legs inside the car, leaned his upper body outside the front passenger window, held a nine-millimeter pistol in each hand, and fired at the Mitsubishi. Several citizens observed the two cars speeding and the passenger of the Chevrolet firing a weapon. The two cars came to a stop, with front bumpers facing each other and with the occupants of both cars firing weapons at each other. A bystander was shot, but it is unknown who fired the weapon that inflicted this injury.

## III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal

law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210

F.3d 481, 485 (5th Cir. 2000).  The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by this Court on a question
> of law or if the state court decides a case differently than this Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*,

210 F.3d at 485.  Questions of fact found by the state court are "presumed to be correct ...

and we will give deference to the state court's decision unless it `was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.'" *Hill*, 210 F.3d at 485, *quoting* 28 U.S.C.§ 2254(d)(2).

## IV.  ANALYSIS

### A.  Ineffective Assistance of Counsel

Generally, to attain habeas relief based upon a claim of ineffective

assistance of counsel, a petitioner must show a specific deficiency on the part of counsel

and must show that the deficiency prejudiced his defense. *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Unconstitutional ineffectiveness may

be inferred, thereby relieving petitioner of the burden of proof imposed under *Strickland*,

*supra*, only in rare situations, such as: 1) Where the accused is completely denied counsel at "a critical stage of his trial"; 2) counsel "actively represented conflicting interests"; or 3) where counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659-661 and nn.25-28, 104 S.Ct. 2039, 2047-2048 and nn. 25-28, 80 L.Ed.2d 657 (1984).  None of the above exceptions are applicable in the instant matter and therefore, petitioner is not relieved of his heavy burden of proof and the requirement that he overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance." *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.), *cert. denied*, 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 728 (1986) (citations omitted);  *Hayes v. Maggio*, 699 F.2d 198, 201-02 (5th Cir. 1983); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985), *cert. dismissed*, 475 U.S. 1138, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986).

Petitioner first complains that trial counsel, Doyle "Buddy" Spell, Jr., was ineffective because he "did not take any action at [petitioner's] preliminary examination". Petitioner, however, fails to specify what counsel should have done at the preliminary examination which he failed to do.  The record indicates that counsel Spell did, in fact, file a "Motion for Preliminary Examination" on petitioner's behalf which called for

petitioner's discharge.[7]  In the absence of specifics regarding what counsel should or should not have done, petitioner has clearly failed to meet his burden of proof.

Petitioner next claims that counsel's representation at his sentencing was deficient.  The minutes of petitioner's August 21, 2000 sentencing, attached to petitioner's habeas application, reflect that Attorney Spell filed on petitioner's behalf a "Motion for Post Verdict Judgment of Acquittal" and a "Motion for New Trial".  On that same date, the trial court, over Spell's objection, denied both motions.  Under LSA-C.Cr.P. art. 873, if a motion for new trial is filed, "sentence shall not be imposed until at least twenty-four hours after the motion is overruled."  Rather than returning to court the following day for the purpose of having the court impose sentence, counsel waived "further delays for sentencing" and petitioner was sentenced to ten years incarceration with credit for time served.  Petitioner claims that counsel was deficient in waiving the sentencing delay.  However, petitioner makes no mention of how he was prejudiced by virtue of the waiver.  Accordingly, petitioner has failed to meet his burden of proof imposed under *Strickland, supra.*

Next, petitioner complains about Spell's trial performance, complaining that he failed to put on a defense.  Petitioner points to a portion of the trial transcript, attached

---

[7]A copy of Spell's motion for preliminary examination is contained in the State rec., vol. 2 of 4.

7

to his habeas application, reflecting that in response to the trial court's inquiry regarding whether he "wish[ed] to put on any evidence", defense counsel responded: "No, your Honor. The defense is going to rest." The transcript further reflects that petitioner, present in court when the defense rested, lodged no objection to counsel's action. It came as no surprise since, as petitioner represents, "Attorney Spell advised him and his witnesses not to testify". Counsel made this decision, according to petitioner, despite the fact that such "testimony would have adduced evidence that would have supported his claim of acting in self-defense."[8]

The failure to call witnesses is not *per se* prejudicial to the point of warranting habeas relief. *See Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("complaints of uncalled witnesses are not favored [in federal habeas review] because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative"). In *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985), the Fifth Circuit noted that for a petitioner to show prejudice under *Strickland*, he must show that the testimony of the witnesses would have been favorable and that the witnesses would have testified at trial.

---

[8] *See* Federal rec., doc. # 8, petitioner's Traverse to State's Answer to Application for Habeas Corpus at p. 2.

Petitioner must show a reasonable probability that the uncalled witnesses would have made a difference in the result. *Alexander*, 775 F.2d at 603.

In the instant matter, petitioner has clearly failed to satisfy his burden of proof. Not only has he failed to show a reasonable probability that the uncalled witnesses would have made a difference, with the exception of himself, he has failed to identify these alleged witnesses who would have testified on his behalf. Further, while there is a strong presumption that the failure to call witnesses is a strategic choice on the part of counsel, *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66, in this case, the court need not rely on such a presumption. Petitioner admits that counsel, rather than negligently failing to call said witnesses, made a strategic decision, advising "him and his witnesses not to testify".

In support of his ineffectiveness claim, petitioner also points to a letter dated July 10, 2000, which he received from Attorney Robin Schulberg. According to petitioner, "Attorney Buddy Spell [trial counsel] admitted ... through a letter from Attorney Robin Schulberg that he did not put up a defense at trial." However, as the State points out in its response (federal rec., doc. # 6, p. 7), said letter contains "no such admission by his [trial] counsel." Instead, the letter, a copy of which is attached to petitioner's habeas application, simply reflects Schulberg's understanding that petitioner

plans to pursue an ineffectiveness claim, along with Schulberg's advice that such a claim is generally pursued on post-conviction, rather than direct appeal, and that petitioner had a time limit within which to timely file such a claim.

In connection with Spell's trial performance, petitioner also complains that he improperly "withdrew the special jury instructions ... that would have established [petitioner's] self-defense claim". In support of this charge, petitioner instructs the court to "(see minute entry attached)".[9]

Along with other exhibits, attached to petitioner's habeas application are minutes from the state court proceeding reflecting that outside the jury's presence, after they had been charged, "Mr. Spell withdrew his previously filed ... First Motion for Special Jury Instructions." Review of said motion, however, reflects a request for a jury instruction not regarding self-defense, but rather, one advising jurors to treat with caution evidence against the accused consisting "solely of the uncorroborated testimony of a co-defendant, co-indictee, or accomplice".[10] Petitioner's need for such a charge was diminished by virtue of the trial court's granting petitioner's motion to sever his co-defendants, thereby ensuring that there would be no "co-defendants" testifying against

---

[9]*See* Federal rec., doc. # 1, petitioner's habeas application under paragraph labeled: "GROUND ONE: INEFFECTIVE ASSISTANCE OF COUNSEL".

[10]A copy of the pertinent motion is contained in the State rec., vol. 2 of 4.

him.[11] Further, review of the pertinent jury charges reflects that jurors were advised, in determining whether or not petitioner had been identified as the perpetrator, to consider "any influences brought to bear on the person claiming to have identified the defendant."[12] Jurors were also instructed with respect to self-defense. Specifically, the trial court advised:

> The use of force or violence upon the person of another is justifiable for the purpose of preventing a forcible offense against one's own person if the force used is reasonable and apparently necessary to prevent the offense.
>
> Thus, if you find the defendant committed the offense charged for the purpose of preventing a forcible offense against his person; and that the amount of force or violence used was reasonable and that the force or violence used was apparently necessary to prevent the forcible offense, then you must find the defendant not guilty.[13]

Thus, counsel's claimed deficiency, that by virtue of his withdrawal of the special jury instructions, jurors were not aware of petitioner's claim of self-defense, is without merit.

### B. Act of Malfeasance/Falsification of Transcript

Review of the transcript from an April 12, 1999 hearing conducted before 24th Judicial District Court Judge Elaine W. Guillot reflects that at the time of his arrest,

---

[11]Copy of petitioner's motion to sever and trial court's order granting same are contained in the State rec., vol. 2 of 4.

[12]*See* State rec., vol. 1 of 4, p. 305.

[13]*See* State rec., vol. 1 of 4, p. 310.

petitioner was charged with attempted first degree murder and bond was set at
$500,000.00.  During this hearing, however, Assistant District Attorney Gregory Briese
informed that after conferring with an associate regarding the incident leading to
petitioner's arrest, it appeared "most likely that the charge to be filed against all [involved
parties would] be ... discharging a firearm ... [rather than] attempted murder...."[14]  Based
upon hearing this, petitioner, who, along with counsel, attended the April 12, 1999
proceeding, appears to have believed that he was being formerly charged with discharging
a firearm, a crime he characterizes as a misdemeanor.  However, he later received the
transcript of the April 12, 1999 hearing which reflected that he was in court on that date
not to be arraigned on a misdemeanor offense of discharging a firearm, but rather, in
connection with defense counsel's motion to lower his $500,000.00 bond.  He also
viewed the Bill of Information, issued May 18, 1999, charging him with the felony
offense of illegal use of weapons or dangerous instrumentalities.  Petitioner's review of
the April 12, 1999 transcript and May 18, 1999 Bill of Information and the conflict
between these documents and his belief that he was originally charged with a
misdemeanor, prompted his claims of malfeasance and deceit on the part of persons
associated with his state court proceedings.

---

[14]The transcript of the April 12, 1999 hearing is contained in the State rec., vol. 2 of 4.

Petitioner claims that Assistant District Attorney Briese "switched" bills of information on him, replacing a bill of information charging him with a misdemeanor with one charging him with a felony. Further, petitioner claims that the court reporter, Julia Oehrlien, falsified the transcript of the April 12, 1999 proceeding, making it appear to be a bond reduction hearing rather than an arraignment.

Petitioner, in support of the above allegations, points to the state district court's "post-conviction ruling" wherein petitioner claims that the "court admitted ... that Assistant District Attorney Greg Briese committed this act of malfeasance but claim[ed] that the malfeasance was defeated because the jury believed the bill of information."[15] However, a review of the pertinent ruling reflects that contrary to petitioner's claim, the trial court did not admit that Briese committed the alleged act of malfeasance, i.e., that Briese "switched" the pertinent bill of information to reflect a felony charge rather than a misdemeanor charge. Rather, the state court specifically provided that the "claim of malfeasance on the part of the prosecutor is ... defeated by the fact that the jury found that the evidence supported the allegations of the [alleged replacement] Bill of Information."[16] In other words, the district court found the issue of whether the assistant district attorney

---

[15]*See* Federal rec., doc. # 1, petitioner's habeas application under the paragraph labeled: "GROUND TWO: MALFEASANCE IN OFFICE".

[16]A copy of the state district court's "Judgment with Incorporated Reasons for Judgment" is attached to petitioner's habeas application and is contained in the State rec., vol. 4 of 4.

switched the original bill of information with a replacement bill of information to be moot due to the jury's finding that the evidence supported a finding of guilt with respect to the crime described in the alleged replacement bill of information, namely, the felony of illegal use of weapons or dangerous instrumentalities.

Petitioner also claims that Assistant District Attorney Briese made a statement at trial that "petitioner may-be should be found guilty of a lesser charge". This statement, according to petitioner, reflects Briese's knowledge of the fact that he did not have probable cause to prosecute petitioner on the felony charge of illegal use of weapons and that petitioner was facing the felony charge only because Briese switched the bills of information.[17]

An obvious problem with the above argument is petitioner's failure to specify where, in the trial transcript, Assistant District Attorney Briese allegedly made such a statement. The only place in the trial transcript where Briese even comes close to making such a statement is during closing arguments when he makes a brief reference to the court's upcoming jury instructions regarding "lesser and included verdicts."[18] Such references are routinely made in cases where "lesser and included" offenses exist and are

---

[17]These allegations are contained in petitioner's habeas application under the paragraph labeled: "GROUND TWO: MALFEASANCE IN OFFICE".

[18]*See* State rec., vol. 1 of 4, p. 312.

14

not indicative of any wrongdoing on the part of the prosecution with respect to the original charge lodged against a defendant in his or her bill of information.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, James Jerrod Spikes, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this **24th** day of **June**, 2005.

LOUIS MOORE, JR.
United States Magistrate Judge

15